KENTUCKY STATE POLICE,
Appellant

v.

Benjamin McCRAY; Hon. Grant Roark, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2013–ca–000857–wc.

Court of Appeals of Kentucky.

Nov. 1, 2013.

K. Lance Lucas, Florence, KY, for appellant.

Daniel F. Dotson Whitesburg, KY, for appellee Benjamin McCray.

Before COMBS, NICKELL and STUMBO, Judges.

## OPINION

STUMBO, Judge:

The Kentucky State Police ("KSP") appeals from an Opinion of the Workers' Compensation Board ("the Board") which vacated and remanded an Opinion and Order of the Hon. Grant S. Roark, Administrative Law Judge ("ALJ"). ALJ Roark determined that Trooper Benjamin McCray's claim for benefits arising from shooting-related Post–Traumatic Stress Disorder ("PTSD") required proof that the PTSD resulted from a physical injury, and that the record did not support such a finding. In vacating the ALJ's Opinion and Order, the Board concluded that the statutory definition of injury does *not* require physical contact, that a "work-related traumatic event" was sufficient to support a claim for benefits arising from PTSD, and that on remand the ALJ was required to re-examine whether McCray was entitled to benefits. The KSP now argues that *Kubajak v. Lexington–Fayette Urban County Government,* 180 S.W.3d 454 (Ky.2005), requires proof of a *physically* traumatic event in order to sustain a claim for benefits arising from PTSD, and that the Board erred in failing to so find. We conclude that *Kubajak* holds that PTSD is compensable only if it results from a physically traumatic event to the Petitioner. Since ALJ Roark found that McCray was not physically injured in the shooting, and as this finding is supported by substantial evidence of record, we reverse the Board's Opinion directing the ALJ to re-examine McCray's claim for benefits.

On April 11, 2012, McCray filed a Form 101 alleging that on September 25, 2009, and while in the employ of the KSP as a trooper, he sustained the injury of "psychological trauma, severe PTSD." McCray described the injury as having occurred when he "shot and killed a man pointing a gun at me and threatening me."

On May 25, 2012, KSP filed a motion to bifurcate the matter for consideration of whether the statute of limitations barred the claim and whether McCray sustained a compensable injury under KRS Chapter

342. On September 4, 2012, the Benefits Review Conference ("BRC") rendered an Order noting that "injury as defined by the Act" was the contested issue.

McCray testified by way of deposition on June 5, 2012, and in person at a September 18, 2012 hearing. He described the incident when he was called to a domestic disturbance on that date. When he arrived at the scene, he was confronted by a man who he believed was armed with a gun, and was forced to shoot the man in order to protect his own life. After shooting the suspect, and because he did not know if other individuals at the scene were armed, McCray retrieved a rifle from his KSP vehicle and waited in a wooded area until additional troopers arrived. It was later determined that the suspect was armed with a BB gun. In response to the question of whether McCray was physically injured in the incident, he responded "I don't think so."

McCray stated that shortly after the incident, he began experiencing paranoia, lack of sleep, as well as episodes of rage and anger. By April, 2010, McCray stopped working because his rage and anger "got to the point where I was going to end up hurting somebody that didn't need to be hurt." At the September 18, 2012 hearing, McCray confirmed that he did not sustain a physical injury as a result of the September 25, 2009 incident, and was not hit, bruised, cut or scraped, and did not fall down or bump into anything.

As to McCray's psychological issue, evidence was adduced from the records of Dr. Gary Patton that McCray suffered from major depression, panic disorder, severe occupational issues and PTSD. Dr. Patton opined that McCray was "totally and permanently disabled from any form of work due to the severity of his symptoms." Other medical evidence, including the reports of psychologist Michele Amburgey

and Dr. James Daum confirmed the diagnosis of PTSD and psychological unfitness to perform his duties as a trooper for the KSP.

The matter proceeded before the ALJ, who rendered an Opinion and Order on November 19, 2012. The ALJ cited *Lexington–Fayette Urban County Government v. West*, 52 S.W.3d 564 (Ky.2001), for the proposition that the 1996 revision of KRS Chapter 342 defined a compensable "physical injury" as an event that involves physical trauma and proximately causes a harmful change in the human organism that is evidenced by objective medical findings. In particular, the ALJ cited that portion of *West* holding that "in instances where the harmful change is psychological, psychiatric, or stress-related, it must directly result from the physically traumatic event." *West*, 52 S.W.3d at 566–67. The ALJ went on to hold that "the relevant question in this claim is whether plaintiff's psychological impairment directly results from a physically traumatic event."

After commending McCray for his "impeccable honesty" and characterizing him as an "exceptionally credible witness", the ALJ noted that just as McCray was required to conduct himself as a KSP Trooper within the boundaries of the law, so too was the ALJ constrained in the exercise of his duties by the statutory law and the rulings of the appellate courts. In so doing, the ALJ noted with regret that "there is no evidence that plaintiff suffered any kind of physical injury or physical trauma on the night of the shooting. Indeed, the Administrative Law Judge personally questioned plaintiff on this point at the hearing and plaintiff could not offer any physical trauma or even physical exertion beyond the firing of his weapon at the suspect."

Finally, the ALJ concluded that "because there is no evidence that the plaintiff

endured any kind of physical trauma on September 25, 2009 or that his PTSD is due to any physically traumatic event (physically traumatic to him, not the suspect) . . . as a matter of law, the plaintiff's claim must be dismissed."

McCray appealed to the Board, which rendered an Opinion on April 19, 2013. In vacating and remanding the matter, the Board maintained that the statutory definition of "injury" set out in KRS 342.0011(1) *"does not require physical contact."* (Emphasis original). It then recited the events occurring on September 25, 2009, culminating in McCray shooting and killing the suspect. The Board concluded that "[b]ased on the uncontroverted facts, the events of September 25, 2009, comprise a prima facie 'work-related traumatic event . . . arising out of and in the course of employment[.]' " The Board then noted the medical evidence that McCray suffered a host of distinct physical symptoms shortly after the September 25, 2009 incident, including heart pounding, chest pain, sweating, trembling and shortness of breath. In so doing, the Board held that the "ALJ may rely upon McCray's testimony regarding his high blood pressure *in conjunction with* Dr. Patton's medical records to find the work-related traumatic event on September 25, 2009, proximately caused a 'harmful change in the human organism as evidenced by objective medical findings.' " (Emphasis original).

Ultimately, the Board remanded the matter to the ALJ for a determination of whether McCray sustained a physical injury as defined by KRS 342.0011(1) in light of the fact that McCray experienced a 'work-related traumatic event arising out of and in the course of employment' on September 25, 2009, in having to shoot and kill a man in defense of his own life and in light of the high blood pressure he sustained immediately afterwards and the subsequent physical symptoms he experienced as noted in Dr. Patton's medical records.

The Board concluded that if the ALJ should determine that McCray sustained a physical injury as defined by the statute, the ALJ must then determine if McCray's PTSD is a direct result of that injury. It held that if the ALJ answers that question in the affirmative, McCray's PTSD is also an "injury" as defined by KRS 342.0011(1). This appeal followed.

■ The KSP now argues that the Board erred in vacating and remanding the ALJ's Opinion and Order for additional findings. It maintains that KRS 342.0011(1) defines an "injury" as a work-related traumatic event or series of such events that cause a harmful change in the human organism. The statute, in its view, requires that a psychological, psychiatric, or stress-related change in the human organism must be a "direct result of a physical injury[.]" KRS 342.0011(1). It directs our attention to *West* and *Kubajak, supra,* which it claims hold that 1) the term "injury" refers to the traumatic event or series of events that cause the harmful change rather than the harmful change itself, and 2) PTSD is not an "injury" in and of itself, but must result from a *physical trauma to the claimant.* KSP contends that the record clearly demonstrates that McCray sustained no physical trauma whatsoever; therefore, the Board was required to affirm the ALJ's conclusion that the PTSD did not arise from a physical trauma to McCray and benefits must be denied.

KRS 342.0011(1) states that,

"Injury" means any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective

medical findings. "Injury" does not include the effects of the natural aging process, and does not include any communicable disease unless the risk of contracting the disease is increased by the nature of the employment. "Injury" when used generally, unless the context indicates otherwise, shall include an occupational disease and damage to a prosthetic appliance, ***but shall not include a psychological, psychiatric, or stress-related change in the human organism, unless it is a direct result of a physical injury*** [.] (Emphasis added).

It is clear from the plain and unambiguous statutory language that an "injury" for purposes of KRS Chapter 342 shall not include a psychological, psychiatric or stress-related change in the human organism unless it is a direct result of a physical injury. PTSD as suffered by McCray is a psychological, psychiatric or stress-related change in the human organism; however, by his own testimony he admitted that he suffered no physical injuries on the date of the shooting. Ergo, McCray is not entitled to benefits arising under KRS Chapter 342 absent a causal, physical injury.

We are compelled to acknowledge that McCray is in all respects a sympathetic claimant, and from our reading of the opinions of the ALJ and the Board, it is readily apparent that they recognize this reality. Nevertheless, as the ALJ properly acknowledged in his Opinion and Order, the ALJ as well as all appellate tribunals are bound to apply the statutory and case law in its current form and not as one may wish it to exist. KRS 342.0011(1) clearly limits compensability to those occurrences of PTSD arising from physical injury to the claimant. *West* and *Kubajak* apply and clarify this provision. In *Kubajak*, the claimant was a Lexington–Fayette police officer who suffered from PTSD as a result of "highly stressful duties required by

the job" and repeatedly observing gruesome crime scenes. The ALJ determined that the PTSD was not caused by a physical injury, and this determination was affirmed by the Board, the Court of Appeals and Kentucky Supreme Court. In affirming the Opinion of the Court of Appeals, the Kentucky Supreme Court recognized that the ALJ found no physical injury to the claimant, that this determination was conclusive and binding as to all questions of fact, and that the claimant was not entitled to benefits under the facts presented because the PTSD was not caused by a physical injury.

*Kubajak* is on point and disposes of the issues herein. In the matter before us, the ALJ unequivocally found that McCray suffered no physical injury when he shot and killed the suspect, and this finding is supported by McCray's deposition and direct testimony at the hearing. In *Kubajak*, the Kentucky Supreme Court addressed the claimant's burden of proof and the standard of review, stating:

> The claimant bore the burden of proving every element of his claim, including the fact that he sustained an "injury" as defined by KRS 342.0011(1). *Roark v. Alva Coal Corp.,* 371 S.W.2d 856 (Ky. 1963). KRS 342.285 provides that an ALJ's decision is "conclusive and binding as to all questions of fact." As the finder of fact, it is the function of the ALJ to determine the credibility of witnesses, to draw reasonable inferences from the evidence, and to weigh conflicting evidence. *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418 (Ky.1985); *Caudill v. Maloney's Discount Stores,* 560 S.W.2d 15, 16 (Ky.1977). Having failed to convince the ALJ that his post-traumatic stress disorder is a direct result of a physical injury, the claimant's burden on appeal is to show that the evidence in his favor was so overwhelm-

ing that the finding to the contrary was unreasonable. *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky.1986).

*Kubajak,* 180 S.W.3d at 459.

On appeal to the Board, McCray bore the burden of proof to demonstrate that the evidence in his favor was so overwhelming that the finding to the contrary was unreasonable. *Francis, supra.* He cannot meet that burden, as he candidly acknowledged that he was not injured on September 25, 2009. Additionally, *West* refutes the Board's conclusion that the shooting was a work-related traumatic event sufficient to support a claim of PTSD. Furthermore, *resultant* physical manifestations of the stressful event such as high blood pressure or a racing heartbeat do not constitute a *causal,* physically traumatic event sufficient to support a claim for benefits based on PTSD. *West, supra.*

■ Again, we are constrained by the statutory law and the decisions of the Kentucky Supreme Court. KRS 342.0011(1), *West* and *Kubajak* collectively and conclusively mandate that PTSD and related psychological disease processes and symptomatology are compensable within the Workers' Compensation framework only when they result from an event or series of events which physically traumatized the claimant. The Board erred in failing to so rule.

For the foregoing reasons, we reverse the Opinion of the Workers' Compensation Board.

NICKELL, Judge, concurs.

COMBS, Judge, concurs and files separate opinion.

COMBS, Judge, Concurring.

I file this separate concurrence because the outcome of this case, while compelled by the lamentable state of the current law, is fundamentally and profoundly unjust, inhumane, and illogical. It cries out for a statutory revision by the General Assembly.

At issue is KRS 342.0011(1), which defines "injury" as "a harmful change in the human organism evidenced by objective medical findings." Without dispute, McCray is severely injured according to that portion of the statutory definition.

As the Board correctly found, McCray's injuries are both physical and psychological in nature, and their gravity has been amply substantiated by objective medical evidence. It is also indisputable that McCray suffered a work-related traumatic event resulting in his PTSD. Nonetheless, the statute contains the following anachronistic language barring him from recovering for PTSD: "unless it is a direct result of a physical injury[.]"

This language requiring physical impact under the circumstances of this case has produced an absurd and unjust result in clear derogation of the beneficent purpose underlying Workers' Compensation and governing courts in construing its statutory scheme.

This same language has produced equally wrong or contradictory outcomes in numerous other cases. The majority opinion discussed *West, supra,* in which a police officer "scuffled" with a "knife-wielding suspect." The physical encounter of a "scuffle" sufficed to render her resulting PTSD compensable. Yet, the police officer in *Kubajak, supra,* did not receive compensation for his PTSD resulting from years of traumatic exposures to horrific crime scenes that he had worked. No touching, no recovery—despite the fact that the first portion of KRS 342.0011(1) provides: *Injury* means "any work-related traumatic event or series of traumatic events, including cumulative trauma" that

produces that harmful change in the human organism.

Tort law has recently been brought into the modern age that treats psychological trauma as resulting in debilitating injuries. In *Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012), our Supreme Court specifically abandoned the long-established physical impact rule in an action for fright, shock, or mental anguish, now allowing recovery for severe or traumatic emotional injury if sound medical evidence substantiates the injury. The Supreme Court wisely recognized and acknowledged the reality that devastating psychological damage may readily arise from exposure to trauma or tragedy despite the absence of actual physical contact. Indeed, psychological wounds so inflicted may be more destructive of the human organism than the tangible injuries flowing from physical impact.

It is true that tort law does not govern in the Workers' Compensation context. *Edwards v. Louisville Ladder*, 957 S.W.2d 290 (Ky.App.1997). But I respectfully submit that it is high time for Workers' Compensation to catch up with the reasoning of *Osborne* and to similarly abandon the physical impact rule.

It is a patent disgrace to have to deny recovery to McCray.