RENDERED:  JANUARY 22, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0342-WC

FILLIPPE BAILEY　　　　　　　　　　　　　　　　　　　　　APPELLANT

　　　　　　　　　PETITION FOR REVIEW OF A DECISION
v.　　　　　　　　OF THE WORKERS' COMPENSATION BOARD
　　　　　　　　　ACTION NOS. WC-17-79211 AND WC-18-00869

MILLER TRANSPORTATION, INC.;
HONORABLE ROLAND CASE,
ADMINSTRATIVE LAW JUDGE; AND
KENTUCKY WORKERS'
COMPENSATION BOARD　　　　　　　　　　　　　　　　　　　APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; MAZE AND K. THOMPSON, JUDGES.

MAZE, JUDGE:  The single question in this appeal from an opinion of the

Workers' Compensation Board (Board) is whether the evidence before the

Administrative Law Judge (ALJ) compelled a finding that appellant suffered a

compensable cervical spine injury in 2017. Because our review of the record convinces us that the evidence was not so overwhelming as to compel a decision in appellant's favor, we affirm the decision of the Board.

On May 23, 2017, in the course of his employment as a bus driver for appellee Miller Transportation, Inc., appellant Fillippe Bailey was transferring bags from one bus to another. In his deposition testimony, Bailey indicated that the luggage was heavier than the 50-pound limit and had not been properly tagged as overweight luggage. As he attempted to transfer the first bag, Bailey stated that he felt pain in his lower back, shoulders, and neck. He nevertheless finished transferring the luggage, as well as completing his route, testifying that he was continuing to have pain radiating from his neck to his shoulders and lower back. Bailey stated that the following morning he had pain in his left lower back and hips, radiating down into his left leg. He also testified that continuing numbness and tingling in his hands affects his ability to drive for long periods of time, and thus, he did not feel that he was capable of returning to the job he was performing for Miller at the time of the injury.

Bailey's claim for benefits stemming from the May 23, 2017, injury was consolidated with an occupational disease claim which has no bearing on this appeal. The ALJ ultimately awarded Bailey temporary total disability benefits, permanent partial disability benefits, and medical benefits for a lumbar spine injury

and dismissed his claim for an alleged permanent injury to his cervical spine area. After the denial of a petition for reconsideration of the award, Bailey appealed the denial of his cervical spine injury claim to the Board.

In affirming the decision of the ALJ regarding Bailey's alleged cervical injury, the Board cited records of the emergency department of Hardin Memorial Hospital dated May 24, 2017. Notes of the triage nurse reflected a chief complaint of left lower extremity pain, although the notes also stated: "[t]his occurred yesterday (left hip pain, neck down to lower back pain, from lifting heavy luggage yesterday)." The emergency room physician, Dr. David Rodriguez, noted Bailey's chief complaints as back pain, left leg pain, and left hip pain. Dr. Rodriguez also noted that a physical examination disclosed a normal inspection of Bailey's neck which was not tender, with painless range of motion. The radiology report, including x-rays of the lumbar spine and hips, listed the reason for Bailey's ER visit as "WC-NEC/BACK/HIP PAIN." The ER Department "Workers' Compensation Evaluation Form," which Bailey signed, noted that his lumbar spine was tender on examination, radiating to the left hip, and included a diagnosis of lumbar strain, sciatica, and arthritis.

The Board also cited records of Bailey's treatment at the Patel Medical Center which noted his chief complaint as left hip and back pain. Bailey provided a history of experiencing a pull in his back while unloading luggage. Dr.

Surya S. Patel noted that Bailey continued to have pain radiating down his left hip and leg after having been previously given an injection at the emergency room. Dr. Patel diagnosed low back pain and ordered an MRI of the lumbar spine. Bailey returned on June 6, 2017, complaining of back pain which Dr. Patel diagnosed as "1) low back pain, 2) radiculopathy, lumbosacral region."

The Board referenced a report from Dr. Thad Jackson who saw Bailey on July 31, 2017, regarding complaints of low back pain radiating to the left leg with tingling and a numbness sensation after a work injury on May 23, 2017. Dr. Jackson also saw Bailey on February 15, 2018, to provide an impairment rating, assessing a 13% impairment for his lumbar spine related to lumbago/low back pain, lumbar spinal stenosis, sciatica, and synovial cyst, right at L3-4. Dr. Jackson recommended restrictions of no lifting greater than twenty to thirty pounds, no excessive bending or twisting at the waist, and being given the ability to change positions frequently. In an August 17, 2018, report, Dr. Jackson recorded Bailey's complaints of low back pain with intermittent radiation of pain to the left leg and neck pain causing headaches, as well as paresthesia in the arms and pain from the neck to the arms following the injury work injury of May 23, 2017. Dr. Jackson diagnosed hand paresthesia and cervicalgia in addition to the low back conditions cited in his February 15, 2018, report.

Finally, the Board cited the reports of the independent medical examiners, Dr. Ellen Ballard, Dr. Jules Barefoot, and Dr. Gregory T. Snider. Dr. Snider examined Bailey on October 2, 2018, diagnosing low back strain with left sciatica and finding no evidence in the record indicating significant, pre-existing low back problems. Of pertinence to this appeal, Dr. Snider opined that Bailey did not suffer an injury to his neck, upper back, or mid-back in the May 23, 2017, work incident. In Dr. Snider's opinion, the May 23, 2017, accident caused a soft tissue sprain or strain but did not cause any change in Bailey's cervical or thoracic spine. He assessed a 5% whole person impairment attributable to the May 23 incident and noted that Bailey has non-work-related neuropathy of the arms, as well as hip arthritis. Dr. Snider also assigned a thirty-pound lifting limit with no repetitive bending or lifting. In a supplemental report dated December 7, 2018, Dr. Snider opined that a proposed MRI of Bailey's cervical spine and an EMG/NCV are not related to the work injury because medical records clearly show that he complained solely of low back symptoms for over two months before any cervical complaints were documented. Dr. Snider stated in a second supplemental report dated February 7, 2019, that he had reviewed Dr. Barefoot's January 8, 2019, evaluation and that Dr. Barefoot's report did not change the conclusions expressed in his previous October 2, 2018, report.

Dr. Barefoot performed an independent medical examination on January 8, 2019, noting that Bailey reported his neck pain became progressively worse after the May 23, 2017, work incident and concluding that his complaint of ongoing pain with radiation is a manifestation of underlying cervical disorder brought on by the work accident. Dr. Barefoot explained that despite his underlying degenerative disc disease of the lumbar and cervical spine, Bailey did not have an active impairment prior to the work incident and thus assessed an 8% impairment for the lumbar spine condition and a 5% impairment for the cervical spine condition for a combined 13% impairment rating.

Dr. Ballard performed an independent examination on March 20, 2019, noting Bailey's history of diffuse neck and back complaints, as well as degenerative disc disease, which were unrelated to the work injury. Dr. Ballard found no evidence that his cervical spine was affected by the work injury and stated that the range of motion demonstrated during her examination of Bailey did not correlate with Dr. Barefoot's opinion concerning the alleged cervical injury. Dr. Ballard also emphasized that Bailey's cervical spine complaints were not reported until several weeks after the May 23, 2017, injury.

In dismissing Bailey's alleged cervical injury claim, the ALJ entered the following findings:

> Concerning the alleged cervical injury resulting from the May 23, 2017 incident, the ALJ is not

persuaded the plaintiff sustained a permanent injury to his cervical area. Only Dr. Barefoot assigned any impairment to the cervical area. The ALJ notes Dr. Jackson did not assign an impairment to the cervical area. Dr. Snider and Dr. Ballard both found no impairment or found that the alleged cervical condition was not work related. The ALJ is persuaded by the opinion of Dr. Snider and Dr. Ballard that the plaintiff did not sustain a cervical injury resulting from the work related accident of May 23, 2017 and his claim for permanent disability to the cervical area is therefore dismissed.

In response to Bailey's petition for reconsideration of the dismissal of his cervical injury claim, the ALJ stated:

The plaintiff also requests a review of the finding of no cervical injury. As indicated in the original Opinion, this is supported by the opinions of Dr. Ballard and Dr. Snider. The plaintiff's treating physician, Dr. Jackson, assigned no impairment for the cervical area. The mechanism of the injury would certainly be more consistent with a lumbar injury rather than a cervical injury. In any event, the ALJ again relies on the opinions of Dr. Ballard and Dr. Snider to find no cervical injury.

Bailey's appeal to the Board centered on the contention that the opinions of Dr. Ballard and Dr. Snider were based upon an incorrect and incomplete medical history, thus rendering them corrupt, erroneous, and insufficient to constitute substantial evidence supporting the opinion of the ALJ. In affirming the decision of the ALJ, the Board found Bailey's reliance upon *Cepero v. Fabricated Metals Corporation*, 132 S.W.3d 839 (Ky. 2004), unavailing. We discern no error in the decision of the Board.

We commence by reiterating the familiar standards of our review in workers' compensation cases. Because Bailey, who had the burden of proving each of the essential elements of his claim and carried the risk of non-persuasion, was unsuccessful before the ALJ, the question becomes whether the evidence compels a different result. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984). "In order to rise to the level of compelling evidence, and thereby justify reversal of the ALJ under this circumstance, the evidence must be so overwhelming that no reasonable person could reach the same conclusion as did the ALJ." *Groce v. VanMeter Contracting, Inc*., 539 S.W.3d 677, 682 (Ky. 2018) (citations omitted). Further, "[w]hen reviewing the Board's decision, we reverse only where it has overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice." *GSI Commerce v. Thompson*, 409 S.W.3d 361, 364 (Ky. App. 2012) (citing *Western Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)). With these standards in mind, we turn to the issue advanced in this appeal.

As he did before the Board, Bailey insists that there is no substantial evidence supporting the decision of the ALJ because the opinions of Dr. Ballard and Dr. Snider were based upon an incorrect and incomplete history concerning the timing of his reports of neck pain. Bailey maintains that the opinions of both Dr. Ballard and Dr. Snider are predicated upon a history of no neck complaints until

-8-

two months after the injury when, in fact, the records of his emergency room visit at Hardin Memorial Hospital document the fact that he complained of "neck down to lower back pain, from lifting heavy luggage yesterday." He also alleges that he reported neck pain to the emergency room physician, Dr. Rodriguez.

Bailey also maintains that the fact that Dr. Jackson did not assess an impairment for his cervical condition does not indicate he concluded there was no cervical injury. Citing the fact that Dr. Jackson noted neck pain into the hands with paresthesia and recommended an MRI in order to treat his cervical condition, Bailey argues that the evidence compels a finding that he sustained a work-related neck injury in the May 23, 2017, work incident. Like the Board, we disagree.

The proper interpretation and application of the holding in *Cepero*, 132 S.W.3d 839, is dispositive of Bailey's argument regarding the opinions of Dr. Ballard and Dr. Snider. In *Cepero*, the ALJ awarded benefits for an alleged work-related knee injury based upon evidence from two doctors who indicated that the knee condition was related to a work injury. Because neither doctor had been informed that Cepero had suffered a severe knee injury several years prior, the Board reversed the ALJ's finding that the doctors' opinions were based upon substantial evidence and therefore sufficient to support findings of causation. In affirming the opinion of the Board, the Supreme Court explained:

> In cases such as this, **where it is irrefutable that a physician's history regarding work-related causation**

**is corrupt due to it being substantially inaccurate or largely incomplete**, any opinion generated by that physician on the issue of causation cannot constitute substantial evidence. **Medical opinion predicated upon such erroneous or deficient information that is completely unsupported by any other credible evidence** can never, in our view, be reasonably probable.

*Cepero*, 132 S.W.3d at 842 (emphases added).

Here, after reviewing the evidence before the ALJ, the Board concluded that Dr. Ballard and Dr. Snider had not been provided a history so inaccurate or incomplete as to render their opinions lacking in probative value. The record discloses that Dr. Ballard and Dr. Snider had been provided with the emergency room records from Bailey's Hardin Memorial Hospital visit, as well as the treatment records of Dr. Patel and Dr. Jackson prior to expressing their opinions as to the compensability of the alleged cervical injury. In addition, Dr. Snider filed a supplemental report after having reviewed the subsequent independent medical evaluation of Dr. Barefoot. Thus, the Board noted that Dr. Ballard and Dr. Snider *had* been accurately informed of Bailey's medical history regarding the alleged neck injury despite his claim that they were misinformed or unaware.

Further, the normal examination of Bailey's cervical spine at the emergency room and the absence of cervical complaints in the May 26, 2017, and June 6, 2017, notes of Dr. Patel support the opinions of Dr. Ballard and Dr. Snider

-10-

that Bailey did not have cervical complaints at the time of the May 23, 2017, work incident. As the Board correctly observed, the triage nurse's reference to "neck down to lower back pain" could reasonably be interpreted as defining the range of pain in Bailey's spine rather than the cause of the pain. Finally, we concur in the Board's assessment that the emergency room physician's examination revealing a normal range of motion, standing alone, constitutes sufficient evidence to support a finding that Bailey did not sustain a cervical injury in the May 23, 2017, work incident.

We are convinced that the decision of the Board falls squarely within the rationale set out in *GSI Commerce*, *supra*, in which this Court distinguished the facts in *Cepero* from the facts before it in Thompson's case:

> We are persuaded that the facts in *Cepero* are readily distinguishable from the facts of this matter. **In *Cepero*, there was a complete omission of a significant and clearly relevant past injury, misleading the medical expert to find the claimant's injury to be entirely work-related**. The medical expert testified that if she had known of the past injury, her opinion would have been different. **Additionally, the medical opinion described in *Cepero* was completely unsupported by any other credible evidence.**
>
> In this case, there is nothing to indicate that Thompson attempted to conceal her previous neck and shoulder pain from any of the medical experts. During his deposition, Dr. Roberts explained specifically that he had been satisfied with the medical history that Thompson had given him and that he had been aware at the time that he gave his opinion that she had had some

> right-side neck and right shoulder pain prior to August 3, 2009. Furthermore, Dr. Roberts's opinion was not "unsupported by any other credible evidence." As the ALJ noted, the opinion of Dr. Roberts was confirmed by Dr. Changaris. Under these circumstances, the ALJ was not required to disregard Dr. Roberts's opinion. The weight to be given to it was clearly a matter for the ALJ to decide within the broad scope of his discretion.

409 S.W.3d at 364-65 (emphases added.)

In sum, our review of the record in this case dispels Bailey's contention that the evidence compels a finding that he suffered a work-related cervical injury in the May 23, 2017, accident. Clearly, the opinions of Dr. Ballard and Dr. Snider are not so "substantially inaccurate or largely incomplete" that they do not constitute substantial evidence supporting the decision of the ALJ. *Cepero*, 132 S.W.3d at 842. Neither are their opinions "completely unsupported by any other credible evidence[.]" *GSI Commerce*, 409 S.W.3d at 364. Thus, the weight to be accorded the opinions of Dr. Ballard and Dr. Snider was "clearly a matter for the ALJ to decide within the broad scope of his discretion." *Id*. at 365.

Accordingly, the opinion of the Workers' Compensation Board is affirmed.

ALL CONCUR.

-12-

BRIEFS FOR APPELLANT:

Stephanie N. Wolfinbarger
Louisville, Kentucky

BRIEF FOR APPELLEE MILLER
TRANSPORTATION, INC.:

Thomas L. Ferreri
Matthew J. Zanetti
Louisville, Kentucky